[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 310.]

OFFICE OF DISCIPLINARY COUNSEL *v.* GRIFFITH.

[Cite as *Disciplinary Counsel v. Griffith*, 2000-Ohio-80.]

*Attorneys at law—Misconduct—Two-year suspension with eighteen months of suspension stayed on conditions—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Failing to deposit funds of clients in a trust account— Neglecting or refusing to assist or testify in disciplinary investigation.*
(No. 00-840—Submitted July 6, 2000—Decided November 15, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 99-25.

———————————

{¶ 1} Relator, Office of Disciplinary Counsel, in a complaint filed on April 12, 1999, charged respondent, Martin Stewart Griffith of Columbus, Ohio, Attorney Registration No. 0064443, with violations of the Disciplinary Rules. In the two-count complaint, relator charged respondent with violating DR 9-102(A) (failing to deposit all funds of clients paid to lawyer, other than advances for costs and expenses, in a trust account), 6-101(A)(3) (neglecting legal matter entrusted to lawyer), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (engaging in conduct that adversely reflects on lawyer's fitness to practice law) (two violations), and Gov.Bar R. V(4)(G)[1] (neglecting or refusing to assist or testify in disciplinary investigation). Respondent answered, generally admitting the allegations contained in the complaint, and a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard this matter on March 31, 2000.

———————————

1. The complaint and other documents refer to Gov.Bar R. V(G), when clearly what is meant is Gov.Bar R. (4)(G).

**{¶ 2}** Respondent represented Kathleen Rose Vacheresse, who had been injured in an automobile accident on June 9, 1996. Vacheresse agreed to pay respondent a one-third contingency fee based on any settlement he achieved for her.

**{¶ 3}** Following negotiations with the insurance company, respondent received a check for $12,300 to settle Vacheresse's claim. After Vacheresse endorsed the check, respondent deposited it in his personal checking account. From this account, respondent issued checks to Vacheresse for her share of the settlement and to all the medical providers as agreed except Mount Carmel Health. Nevertheless, respondent paid his personal expenses out of this account, drawing down the account balance to below an amount sufficient to pay Mount Carmel Health. When Mount Carmel Health did not receive payment, it filed a collection action against Vacheresse, adversely affecting her credit.

**{¶ 4}** After unsuccessful attempts to negotiate a reduction in the amount due Mount Carmel Health, respondent borrowed $1,900 from his mother to pay this outstanding bill. Finally, nearly a year after receiving the settlement check, respondent paid the bill due Mount Carmel Health.

**{¶ 5}** When Vacheresse complained to relator about respondent's actions in her case, relator opened an investigation. Relator sought copies of canceled checks relating to Vacheresse's case and copies of bank statements for his IOLTA for the time when respondent negotiated the settlement. Respondent provided the requested checks, albeit two months after relator requested them, but stalled on providing bank statements until relator subpoenaed them.

**{¶ 6}** At a deposition, respondent admitted that the bank statements had been available and that he had not provided them because they would have shown that he had commingled client funds with his personal funds. Respondent failed to bring all subpoenaed bank records to the deposition, although he admitted that he could have. During the investigation, relator learned that respondent had

administered at least four other personal injury cases through his personal checking account, thus failing to open and maintain a lawyer's trust account.

{¶ 7} In mitigation, respondent presented testimony at the hearing about his relapse into alcoholism. About the time of the filing of the complaint, respondent checked himself into an alcohol treatment facility and has since reestablished his connection with Alcoholics Anonymous. At the time of the hearing, respondent met weekly and counseled patients at an alcohol treatment facility. He has also reevaluated his career and has enrolled in a master's program in education. He plans to earn a teaching certificate and become a teacher.

{¶ 8} The panel found, as the parties had stipulated, that respondent violated DR 1-102(A)(4), 1-102(A)(6) (two violations), 6-101(A)(3), 9-102(A), and Gov.Bar R. V(4)(G). The panel recommended that we suspend respondent from the practice of law for two years and stay eighteen months of the suspension, during which respondent shall cooperate with the Ohio Lawyers Assistance Program and work with a monitor. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

————————————

*Jonathan E. Coughlan*, Disciplinary Counsel, and *John K. McManus*, Assistant Disciplinary Counsel, for relator.

*Martin Griffith*, *pro se*.

————————————

**Per Curiam.**

{¶ 9} We adopt the findings, conclusions, and recommendation of the board. We hereby suspend respondent from the practice of law for two years and stay eighteen months of the suspension, with the stay conditioned on respondent's cooperation with the Ohio Lawyers Assistance Program and on respondent's working with a monitor, to be appointed by relator. Failure to satisfy these

conditions will result in the reinstatement of respondent's stayed suspension.  Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————